**FILED**

**FEB 19 2026**

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY ———— DEP CLK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

| | |
|---|---|
| DERRICK WILLIAMS, | Civil Action No. 5:25-cv-567 |
| Plaintiff, | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** |
| vs. | |
| NIKE USA, INC., | |
| Defendant. | |

NOW COMES the Plaintiff, Derrick Williams ("Plaintiff"), proceeding *pro se*, and respectfully submits this combined (1) Opposition to Defendant's Motion to Dismiss and (2) Motion for Leave to File First Amended Complaint under Fed. R. Civ. P. 15(a)(2). Plaintiff attaches his proposed First Amended Complaint as Exhibit A and requests that the Court grant leave to amend, deem the First Amended Complaint filed, and deny the Motion to Dismiss as moot or, in the alternative, deny the Motion because Plaintiff states plausible claims for relief.

## I.      INTRODUCTION

This is an employment discrimination and retaliation case arising from Plaintiff's tenure in a managerial Global Technology Finance role within the Global Risk Management function, from September 2021 through September 1, 2023. Plaintiff, a disabled individual within the meaning of the Americans with Disabilities Act ("ADA"), alleges that Defendant failed to provide reasonable accommodations, subjected him to a hostile work environment, and ultimately terminated his employment on a pretextual basis in retaliation for engaging in protected activity.

Defendant's Motion to Dismiss relies on three primary arguments: (1) that Plaintiff's ADA claims are time-barred due to an untimely EEOC filing; (2) that Plaintiff failed to state plausible factual claims; and (3) that Plaintiff failed to exhaust administrative remedies regarding his Title VII claims. As demonstrated below, Plaintiff's claims are viable, factually grounded, and meet the liberal pleading standards afforded to *pro se* litigants.

## II.      STATEMENT OF RELEVANT FACTS

Plaintiff began his full-time employment with Nike in September 2021. At the time of hire, Plaintiff provided formal notice of his disability through the completion of the Voluntary Self-Identification of Disability Form (Form CC-305). This disclosure was further reinforced through documented direct conversations with management, the visible use of assistive tools, and Plaintiff's active participation in "The Disability Network," Nike's disability-focused employee resource group.

Despite being on notice of Plaintiff's disability, Defendant failed to initiate a good-faith interactive process as required by law. Plaintiff requested reasonable accommodations, including specific computer hardware and written guidance from his supervisor to mitigate environmental barriers related to his disability. These requests were initially granted but later rescinded or ignored. For instance, on August 2, 2023, Plaintiff's supervisor, Sheldon Warmington, explicitly stated he would no longer provide written guidance, effectively denying a previously established reasonable accommodation.

Throughout his employment, Plaintiff was subjected to disparate treatment compared to his non-disabled peers. While non-disabled colleagues were routinely approved for career development opportunities, Plaintiff's requests for tuition assistance—including high-value

leadership courses at Wharton and Stanford —were unjustifiably denied despite his "Successful" performance ratings. Plaintiff was also barred from applying to finance rotational programs for which he met all eligibility criteria, while similarly situated employees in the Global Risk Management ("GRM") group were permitted to participate.

The workplace environment became increasingly hostile through the actions of management. Plaintiff was routinely exposed to discriminatory rhetoric, including the use of racial epithets and derogatory comments regarding LGBTQIA+ colleagues by Senior Audit Managers Seth Norcott and Scott Martin. Plaintiff and another disabled colleague were systematically excluded from group emails and essential work meetings.

In March 2023, Plaintiff engaged in protected activity by formally reporting this exclusionary conduct and discriminatory treatment to his supervisor. Following this report, Plaintiff was subjected to escalating adverse actions. Between March and August 2023, his supervisor issued "scalding reprimands" across multiple communication channels—including Zoom meetings, phone calls, and text messages—for raising valid workplace concerns.

Furthermore, in May 2023, a Senior Audit Manager Seth Norcott submitted a performance review containing materially false and misleading statements. Plaintiff believes this review, which contradicted peer feedback and internal performance records, served as a pretext for the subsequent termination process. Despite Plaintiff earning a "Successful" rating on 80% of his performance inputs for FY23, his year-end evaluation was inexplicably downgraded to "Inconsistent". Plaintiff was involuntarily terminated on September 1, 2023, less than 60 days following the close of an internal investigation into his complaints.

## III.   LEGAL STANDARD OF REVIEW

### A. Standard for Pro Se Pleadings

It is well-established that the pleadings of a *pro se* litigant must be "liberally construed" and are held to "less stringent standards than formal pleadings drafted by lawyers". While a *pro se* complaint must still state a plausible claim for relief, the court must not ignore a clear failure to allege facts, but it should also avoid dismissing a case where a remedial amendment could cure technical defects.

### B. Rule 12(b)(6) Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint rather than the merits of the underlying claims. To survive, a complaint must contain "enough facts to state a claim to relief that is plausible on its face". Facial plausibility exists when the plaintiff pleads factual content that allows the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged". For the purposes of this motion, the Court must accept all well-pleaded factual allegations in the complaint as true.

### C. Rule 12(b)(1) Standard

Under Rule 12(b)(1), a court may dismiss claims for lack of subject matter jurisdiction. The Plaintiff bears the burden of proving that such jurisdiction exists. However, the Supreme Court has clarified that administrative requirements, such as the EEOC charge-filing rule, are "mandatory claims-processing rules" rather than jurisdictional prerequisites.

## IV.    ARGUMENT

### A. Plaintiff's ADA Claims are Not Time-Barred

Defendant moves to dismiss Plaintiff's ADA claims on the grounds that his EEOC charge was filed 224 days after his termination, exceeding the 180-day statutory limitation. Plaintiff respectfully disagrees and asserts that his claims are actionable under the doctrines of equitable tolling and the continuing violation theory.

1. **Continuing Violation:** The discrimination Plaintiff faced was not a single isolated event (the termination) but a continuous pattern of discriminatory and retaliatory acts. This included the repeated denial of reasonable accommodations, exclusion from professional development, and a hostile work environment that persisted until the very day of his termination.

2. **Equitable Tolling:** The timing of Plaintiff's filing should be viewed in light of Defendant's internal processes. Plaintiff participated in an internal investigation regarding workplace misconduct that remained open until shortly before his termination. The "cascade of adverse actions" was triggered by retaliatory performance reviews that were internally corrected and then ignored, creating a confusing administrative landscape for a *pro se* litigant.

3. **Discovery of Violation:** In employment cases, a timeliness argument is not always decisive at the motion to dismiss stage, as factual discovery is required to determine when the Plaintiff reasonably discovered the full extent of the discriminatory intent.

## B. The Complaint Alleges Sufficient Facts to State Plausible Claims

Defendant argues that Plaintiff's Complaint consists of "threadbare recitals" of legal elements. However, the detailed factual history provided by Plaintiff—and further expanded in his Amended EEOC Charge—demonstrates a clear, plausible case for relief.

1. **ADA Discrimination and Failure to Accommodate:** Plaintiff has established that he is a qualified individual with a disability who was performing at a "Successful" level. He has identified specific accommodations requested (written guidance, quiet spaces, hardware) and documented their denial by specific supervisors (Warmington). The denial of these accommodations materially impaired his ability to perform job functions, leading directly to his termination.

2. **ADA and Title VII Retaliation:** Plaintiff engaged in protected activity by reporting discrimination and exclusionary conduct in March 2023. The temporal proximity between this protected activity and the escalating reprimands, negative performance reviews, and termination (less than 60 days after the investigation closed) strongly supports an inference of retaliatory intent.

3. **Hostile Work Environment:** Plaintiff has alleged pervasive and severe conduct, including the use of racial epithets and the systematic marginalization of disabled and neurodivergent employees. He described an atmosphere of "scrutiny, exclusion, and retaliation" that instilled a "persistent sense of dread". These facts meet the standard for an abusive work environment imputable to the employer.

### C. Administrative Remedies Have Been Exhausted

Defendant contends that Plaintiff's Title VII claims should be dismissed because they were not explicitly mentioned in the original EEOC Charge. This argument fails for several reasons:

1. **Scope of Investigation:** The scope of a civil suit is defined by the EEOC investigation that could "reasonably be expected to follow the charge of discrimination". Here, the facts

6

underlying the ADA retaliation and the hostile work environment are inextricably linked to the same actors (Warmington, Norcott) and the same sequence of events. An investigation into disability discrimination and retaliation would naturally uncover the racially discriminatory rhetoric and broader hostile environment fostered by the same management personnel.

2. **Amended Charge:** Plaintiff has prepared an Amended EEOC Charge that explicitly cites violations of Title VII, further clarifying his claims and ensuring the Defendant has adequate notice.

## V.      REQUEST FOR LEAVE TO AMEND (ALTERNATIVE ARGUMENT)

Should this Court find any portion of the original Complaint insufficient to meet the plausibility standard, Plaintiff respectfully requests leave to file an Amended Complaint. Under Rule 15(a)(2), the Court should "freely give leave when justice so requires".

Courts strongly favor resolving cases on their merits, especially for *pro se* litigants. Permitting amendment would allow Plaintiff to formally incorporate the extensive factual details regarding his accommodations, the specific discriminatory remarks made by management, and the detailed timeline of retaliation currently outlined in his amended administrative filings. Granting leave to amend is both proper and strategic, as it would "cure" any technical defects while ensuring the case proceeds based on the substantive facts of the alleged misconduct.

## VI.    CONCLUSION

Plaintiff has alleged sufficient facts to state plausible claims for disability discrimination, failure to accommodate, retaliation, and a hostile work environment. While Defendant seeks to terminate this action on procedural technicalities, the liberal construction required for *pro se*

pleadings and the documented pattern of discriminatory behavior by Nike management demand that this case proceed to discovery.

WHEREFORE, Plaintiff respectfully requests that the Court:

1.  DENY Defendant's Motion to Dismiss in its entirety;

2.  In the alternative, GRANT Plaintiff leave to amend the Complaint; and

3.  Grant such other relief and further relief as the Court deems just and proper.

Respectfully submitted this **19**th day of February, 2026.

By:_____

Derrick Williams
*Plaintiff, Pro Se*
2870 Peachtree RD NW #915-4703
Atlanta, GA 30305
Phone:
Email: 525cv00567@pm.me

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I served a copy of the foregoing Plaintiff's Response in Opposition to Defendant's Motion to Dismiss and Motion for Leave to File First Amended Complaint upon the Defendant's counsel of record via the Court's CM/ECF system, or by placing a copy in the United States Mail, first-class postage prepaid, addressed as follows:

Matthew S. Brown, Esq.
LITTLER MENDELSON, P.C.
620 South Tryon Street, Suite 950
Charlotte, North Carolina 28202

*Attorneys for Defendant*

This the **19th** of February, 2026.

By: _____
Derrick Williams
525cv00567@pm.me
2870 Peachtree RD NW #915-4703
Atlanta, GA 30305

*Plaintiff, Pro Se*

## CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.2(f)

I hereby certify that this memorandum complies with Local Civil Rule 7.2(f) because it is less than 30 pages and contains fewer than 8,400 words, as measured by the word-count function of Microsoft Word.

/s/ Derrick Williams

Derrick Williams

*Pro se Plaintiff*