**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION**

| | |
|---|---|
| DERRICK WILLIAMS, | Civil Action No. 5:25-cv-567 |
| Plaintiff, | |
| vs. | **PROPOSED FIRST AMENDED COMPLAINT** |
| NIKE USA, INC., | |
| Defendant. | |

EXHIBIT A – PROPOSED FIRST AMENDED COMPLAINT

NOW COMES the Plaintiff, Derrick Williams ("Plaintiff"), proceeding *pro se*, and files this proposed First Amended Complaint against Defendant Nike USA, Inc. ("Defendant" or "Nike"), to cure pleading deficiencies alleged in Defendant's Motion to Dismiss and to provide a more definitive statement of facts as requested under the liberal pleading standards afforded to *pro se* litigants. Plaintiff alleges as follows:

## I. JURISDICTION AND VENUE

1. This action arises under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question).

3. Venue is proper in the Eastern District of North Carolina under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred within this district, and Plaintiff is a resident of Wake County, North Carolina.

4. Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), followed by an Amended EEOC Charge on May 27,

2025, alleging disability discrimination, failure to accommodate, retaliation, and hostile work environment under the ADA and Title VII. A true and correct copy of Plaintiff's Amended EEOC Charge, No. 551-2024-02039, is attached as Exhibit 1. The EEOC issued a Notice of Right to Sue dated June 10, 2025, and Plaintiff filed his original Complaint in this Court on September 8, 2025, within 90 days of receipt of the Notice.

## II. THE PARTIES

5. Plaintiff Derrick Williams is an individual and former employee of Defendant. At all relevant times, Plaintiff was a **"qualified individual"** with a disability under 42 U.S.C. § 12102(1), as he has a medical condition documented by board-certified healthcare professionals that substantially limits one or more major life activities.

6. Defendant Nike USA, Inc. is a corporation headquartered in Beaverton, Oregon, and is an "employer" within the meaning of the ADA and Title VII, doing business within this District.

## III. STATEMENT OF FACTS

### A. Employment History and Notice of Disability

7. Plaintiff was employed by Nike in a full-time capacity from September 2021 through his termination on September 1, 2023. Plaintiff served in a senior Global Technology Finance role within the Global Risk Management function, reporting directly to the Chief Risk Officer, with regular visibility to the Audit Committee of the Board of Directors.

8. Upon hire in September 2021, Plaintiff provided **formal notice of his disability** by completing the Voluntary Self-Identification of Disability Form (Form CC-305).

9. This disclosure obligated Defendant to initiate a good-faith **interactive process** pursuant to 29 C.F.R. § 1630.2(o)(3).

10. Notice was further reinforced through documented 1-on-1 conversations with management, Plaintiff's open use of assistive tools on Nike's open floor plan, and his active leadership in "The Disability Network," Nike's employee resource group.

### B. Performance History and Initial Success

11. From September 2021 through July 2022, Plaintiff performed at a high level. For his contributions, he earned a **"Successful" rating** on his Coaching for Excellence (CFE) evaluation for FY22, conducted by Director Gannon Kelley.

12. Despite this rating, following the appointment of Sheldon Warmington ("Supervisor") as Director of Global Risk Management in August 2022, Defendant began a pattern of obstructing Plaintiff's career development.

### C. Denial of Reasonable Accommodations

13. Despite being on notice of Plaintiff's disability, Defendant repeatedly denied reasonable accommodations consistent with recommendations from the **Job Accommodation Network (JAN)**, a federally recognized authority.

14. Plaintiff specifically requested reasonable accommodations, including hardware and software tools and written guidance from his supervisor, to mitigate environmental barriers and disability-related limitations affecting information processing.

15. On August 2, 2023, during a weekly one-on-one meeting, Supervisor Warmington verbally stated that he would no longer provide written guidance—an accommodation that had been

previously established—constituting denial of a reasonable accommodation in violation of 42 U.S.C. §§ 12112(a) and 12112(b)(5)(A).

16. This denial materially impaired Plaintiff's ability to perform essential job functions and served as a catalyst for unjust performance reprimands.

### D. Disparate Treatment and Professional Obstruction

17. Defendant denied Plaintiff access to core benefits provided to non-disabled peers. Plaintiff's formal requests for tuition assistance for high-value professional development, including the **"Executive Presence" course at Wharton School of Business** and leadership courses at Stanford were unjustifiably denied.

18. These programs required a prior "Successful" CFE rating, which Plaintiff indisputably met.

19. Similarly situated non-disabled peers, including two BIPOC employees within the same group, were routinely approved for these benefits, illustrating a discriminatory application of company policy.

20. Between April and June 2023, Plaintiff was **barred from applying to a finance rotational program** by his supervisor, despite meeting all eligibility criteria. A similarly situated employee in the Global Risk Management (GRM) group was permitted to participate.

21. Plaintiff was also denied reimbursement for a professional certification exam preparation course and a required technical reference book for an upcoming audit in GRM, while peers were reimbursed for comparable expenses.

### E. Hostile Work Environment and Discriminatory Rhetoric

22. Plaintiff was subjected to a workplace that was both **objectively and subjectively hostile.**

23. Senior Audit Manager Seth Norcott routinely praised podcasts that promoted inflammatory and **discriminatory political rhetoric and anti-inclusion sentiment.**

24. Plaintiff observed Senior Audit Managers Scott Martin and Seth Norcott making derogatory and discriminatory comments about a colleague belonging to the LGBTQIA+ community and using racial epithets in the workplace. These actions took place during and after hybrid Zoom meetings with colleagues, as well as in a group chat on Slack, Nike's official cloud-based business messaging application. Such conduct fostered a hostile work environment and violated Nike's stated policies on diversity and inclusion.

25. Management issued explicit instructions to marginalize colleagues based on age and disability. This was communicated by Senior Audit Manager Seth Norcott.

26. Specifically, Plaintiff and another employee who self-identifies as neurodivergent were **intentionally excluded** from essential team communications and meetings. This constant atmosphere of scrutiny and exclusion instilled a "persistent sense of dread".

### F. Protected Activity and Escalating Retaliation

27. In March 2023, Plaintiff engaged in **protected activity** by formally reporting disability-based exclusionary conduct and discriminatory treatment to his immediate supervisor, Director Sheldon Warmington, and to Senior Director David Tussing.

28. Following this report, Plaintiff was subjected to a series of "scalding reprimands" across multiple channels, including virtual Zoom meetings, phone calls, and text messages, some of

which occurred outside of normal business hours, and in-person meetings, for raising valid workplace concerns.

29. In May 2023, the Senior Audit Manager submitted a **performance review containing materially false and misleading statements** that directly contradicted internal records of Plaintiff's successful execution of duties.

30. Consistent with *Winston v. Verizon Servs. Corp.*, 633 F.Supp.2d 42 (S.D.N.Y. 2009), negative evaluations following protected activity constitute actionable adverse actions.

31. In June 2023, Plaintiff and a colleague jointly requested a formal internal investigation regarding workplace misconduct, asserting their concerted rights under Section 7 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 157.

32. Defendant compromised this investigation by directing the parties not to discuss their joint complaint and failed to provide Plaintiff with formal documentation of the results.

33. Despite Plaintiff earning a **"Successful" rating on 80% of his performance reviews** for FY23, his year-end evaluation was arbitrarily downgraded to **"Inconsistent"** to provide a pretext for termination.

### G. Retaliatory Termination

34. On September 1, 2023—**less than 60 days** after the close of the internal investigation into his complaints—Plaintiff was involuntarily terminated.

35. The close temporal proximity between Plaintiff's protected disclosures and his termination supports a strong inference of retaliatory intent. See, e.g., *McNeal v. City of Blue Ash*, 117 F.4th 887 (6th Cir. 2024).

36. Defendant is liable under the "Cat's Paw" theory because the biased and retaliatory inputs of the Senior Audit Manager and Supervisor materially influenced the final termination decision. ***Staub v. Proctor Hospital***, 562 U.S. 411 (2011); *Ossanna v. Nike, Inc.*, 365 Or. 482 (2019).

## IV.   CLAIMS FOR RELIEF

### COUNT I: DISABILITY DISCRIMINATION (42 U.S.C. § 12112(a))

37. Plaintiff incorporates the allegations in paragraphs 1 through 36.

38. Plaintiff is a qualified individual with a disability who met Nike's legitimate performance expectations.

39. Defendant discriminated against Plaintiff by denying him professional development, rotational programs, and tuition assistance granted to non-disabled peers, in violation of 42 U.S.C. § 12112(a).

40. Defendant further discriminated by issuing a pretextual negative performance review and terminating his employment because of his disability, in violation of 42 U.S.C. § 12112(a).

### COUNT II: FAILURE TO ACCOMMODATE (42 U.S.C. § 12112(b)(5))

41. Plaintiff incorporates the allegations in paragraphs 1 through 36.

42. Defendant had both formal and informal notice of Plaintiff's disability.

43. Defendant refused to maintain reasonable accommodations, specifically **written guidance** and hardware recommendations from JAN, which were essential for Plaintiff to perform his duties.

44. The denial of these accommodations materially impaired Plaintiff's performance and led directly to his termination in violation of 42 U.S.C. § 12112(b)(5)(A).

## COUNT III: ADA RETALIATION (42 U.S.C. § 12203(a))

45. Plaintiff incorporates the allegations in paragraphs 1 through 36.

46. Plaintiff engaged in protected activity by reporting discrimination in March 2023 and participating in a joint NLRA investigation in June 2023.

47. Defendant took adverse actions, including issuing "scalding reprimands," false performance reviews, and termination.

48. There is a causal connection between the protected activity and termination, evidenced by the less than 60-day gap and the involvement of biased supervisors in violation of 42 U.S.C. § 12203(a).

## COUNT IV: TITLE VII HOSTILE WORK ENVIRONMENT AND RETALIATION (42 U.S.C. § 2000e-3(a))

49. Plaintiff incorporates the allegations in paragraphs 1 through 36.

50. Plaintiff was subjected to unwelcome conduct, including racial epithets and derogatory remarks regarding protected characteristics, fostered by the same management team responsible for his ADA discrimination.

51. Plaintiff's hostile work environment and retaliation claims under Title VII are based on conduct directed at and regarding protected characteristics, including race and sex, and the same managers (including Senior Audit Managers Martin and Norcott and Director

Warmington) who engaged in and tolerated this conduct also participated in the adverse actions challenged in this lawsuit.

52. This conduct was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment, in violation of Title VII, 42 U.S.C. §§ 2000e-2(a)(1) and 2000e-3(a). *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993); *Meritor Sav. Bank v. Vinson*, 477 U.S. 57 (1986).

53. Defendant failed to take prompt remedial action despite notice.

## V.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.  Enter judgment in Plaintiff's favor on all counts;

B.  Award back pay and lost benefits from the date of the unlawful conduct through judgment;

C.  Award front pay in lieu of reinstatement, in an amount to be determined at trial;

D.  Award compensatory damages for emotional distress and financial loss, in an amount to be determined at trial, but exceeding $75,000;

E.  Award punitive damages to deter Defendant from future discriminatory conduct, in an amount to be determined at trial;

F.  Enter a declaratory judgment that Defendant's conduct as described herein violated Plaintiff's rights under the Americans with Disabilities Act, 42 U.S.C. §§ 12112(a), 12112(b)(5), 12203(a), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a);

G. Award Plaintiff reasonable attorneys' fees, litigation expenses, and costs, pursuant to 42 U.S.C. §§ 2000e-5(k) and 12205;

H. Award pre-judgment and post-judgment interest as allowed by law on all monetary awards;

I. Order injunctive relief including, but not limited to, ADA-compliant policies and anti-retaliation training for management; and

J. Grant such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this **19th** day of February, 2026.

By:_____

Derrick Williams
*Plaintiff, Pro Se*
2870 Peachtree RD NW #915-4703
Atlanta, GA 30305
Email: 525cv00567@pm.me

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I served a copy of the foregoing proposed First Amended Complaint upon the Defendant's counsel of record via the Court's CM/ECF system, or by placing a copy in the United States Mail, first-class postage prepaid, addressed as follows:

Matthew S. Brown, Esq.
LITTLER MENDELSON, P.C.
620 South Tryon Street, Suite 950
Charlotte, North Carolina 28202

*Attorneys for Defendant*

This the **19**th of February, 2026.

By: _____
Derrick Williams
2870 Peachtree RD NW #915-4703
Atlanta, GA 30305
Email: 525cv00567@pm.me

*Plaintiff, Pro Se*